IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JHAVON GOODE, | § | |
| | § | |
| Defendant Below- | § | No. 430, 2017 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | ID. No. 1404008621A (S) |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: April 13, 2018
Decided: July 5, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

# **O R D E R**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     The appellant, Jhavon Goode, filed this appeal from the Superior Court's letter order, dated September 20, 2017, denying his first motion for postconviction relief.[1]    After careful consideration, we find no merit to Goode's claims of ineffective assistance of counsel on appeal.   Thus, we affirm the Superior Court's judgment.

---

[1] *State v. Goode*, 2017 WL 4164421 (Del. Super. Sept. 20, 2017).

(2) The record reflects that a Superior Court jury convicted Goode in January 2015 of Assault in the First Degree, Possession of a Firearm During the Commission of a Felony, and Carrying a Concealed Deadly Weapon for the shooting of Jason Terry. Before his scheduled sentencing date, police officers discovered a gun, which was confirmed to match shell casings found at the crime scene. The Superior Court postponed Goode's sentencing to allow defense counsel the opportunity to conduct further testing of the weapon and, if warranted, to file a motion for a new trial.

(3) The DNA testing of the gun was not completed by the time of the next status conference, so defense counsel requested another continuance. The Superior Court denied the request and proceeded with sentencing, noting that if testing yielded some result that might require a new trial, Goode could raise the issue on appeal and request a remand. The Superior Court then sentenced Goode to a total period of twenty-five years at Level V incarceration, with credit for time served, to be suspended after serving thirteen years in prison for decreasing levels of supervision. This Court affirmed Goode's convictions and sentence on direct appeal.[2]

(4) With the assistance of court-appointed counsel, Goode filed his first timely motion for postconviction relief, raising four claims of ineffective

---

[2] *Goode v. State*, 136 A.3d 303 (Del. 2016).

assistance of counsel. After obtaining trial counsel's affidavit, the State's response, and Goode's reply, the Superior Court rejected all of Goode's claims. This appeal followed.

(5) Goode raises three claims in his opening brief on appeal.[3] First, he contends that his counsel on appeal was ineffective for failing to challenge the Superior Court's denial of his proposed jury instruction regarding eyewitness identification. Second, Goode contends that his trial counsel was ineffective for eliciting prejudicial hearsay testimony from the victim during cross-examination. Finally, he contends that his counsel was ineffective for failing to file a motion for a new trial based on the results of additional testing of the gun.

(6) This Court applies the *Strickland*[4] standard in reviewing claims of ineffective assistance of counsel in a timely first postconviction proceeding. Under *Strickland*, Goode must demonstrate that: (a) his counsel's conduct fell below an objective standard of reasonableness; and (b) there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.[5] Goode is required to set forth and

---

[3] To the extent Goode raised other issues in the motion he filed in the Superior Court, he has waived any right to further review of those claims on appeal by failing to argue them in his opening brief. *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993).

[4] *Strickland v. Washington*, 466 U.S. 668 (1984).

[5] *Id*. at 687-88.

substantiate concrete allegations of cause and actual prejudice.[6] Moreover, there is a "strong presumption" that counsel's representation was professionally reasonable.[7]

(7) Goode's first argument is that his counsel on direct appeal was ineffective for failing to challenge the Superior Court's refusal to give his proposed jury instruction regarding eyewitness identification.[8] The record reflects that defense counsel requested that the Superior Court give the following instruction on eyewitness identification:

> An issue is this case is the identification of the defendant. To find the defendant guilty, you must be satisfied, beyond a reasonable doubt, that the defendant has been accurately identified, that the wrongful conduct charged in this case actually took place, and that the defendant was in fact the person who committed the act. If there is any reasonable doubt about the identification of the defendant, you must give the defendant the benefit of such doubt and find the defendant not guilty.
> Identification testimony is an expression of belief or impression by the witness. Its value depends upon the opportunity of the witness to observe the offender at the time of the offense, retain that memory and to make a reliable identification later. In appraising the identification testimony of Jason Terry you should consider the following:
> 1. Whether Mr. Terry had the capacity and an adequate opportunity to observe the offender, at the time of the offense.

---

[6] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[7] *Strickland v. Washington*, 466 U.S. at 689.

[8] In the Rule 61 motion he filed in the Superior Court, Goode also claimed that the Superior Court's denial of his proposed jury instruction violated his right to due process. The Superior Court properly rejected that claim as procedurally barred under Rule 61(i)(4) because it was previously adjudicated but neglected to address Goode's contention that appellate counsel was ineffective for failing to challenge the Superior Court's ruling on direct appeal.

4

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time existed for the witness to make an observation, the distance between the witness and the person identified, lighting conditions, the witnesses [sic] attention, whether the witness had occasion to see or know the identified person previously.

2.     Was the in-court identification made by Jason Terry a product of his own recollection?  You may consider both the strength of the identification, and the circumstances under which the in-court identification was made.  If the identification by Jason Terry [was] influenced by circumstances under which the Defendant was presented to him for identification, you should scrutinize the identification with great care.  You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity for Jason Terry to see the Defendant as a factor bearing on the reliability of the identification.

3.     Finally, you must consider the credibility of Jason Terry's identification of the Defendant in the same way as any other witness, considering whether they are truthful, and considering whether they had the capacity and opportunity to make a reliable observation on the matter in their testimony.

If you are not convinced beyond a reasonable doubt that the Defendant was the person who committed the crime, you must find the Defendant not guilty.

(8)     The first paragraph of Goode's proposed instruction reflected the language of the Superior Court's pattern jury instruction on eyewitness identification.  The additional paragraphs of the proposed instruction were added by defense counsel, who conceded that, to counsel's knowledge, such an instruction had never been given to a Delaware jury.  The Superior Court rejected Goode's proposed instruction in favor of giving the pattern instruction.  The Superior Court concluded that the pattern instruction was a

correct statement of the law and that the additional paragraphs constituted argument that defense counsel could raise in his closing argument to the jury.

(9)    A defendant has an unqualified right to have the jury instructed with a correct statement of the substance of the law.[9]  But, a defendant is not entitled to a particular jury instruction.[10]  This Court will not reverse a trial court's jury instruction on appeal if the instruction was "reasonably informative" and not misleading when "judged by common practices and standards of verbal communication."[11]

(10)   In Goode's case, we find no merit to his postconviction claim that his appellate counsel was ineffective on direct appeal for failing to challenge the Superior Court's denial of his requested instruction because the underlying issue had no merit.  Simply put, the Superior Court's instruction on eyewitness identification was a correct statement of the law,[12] was reasonably informative, and was not misleading.  Any challenge to the Superior Court's instruction on appeal would have been rejected. Accordingly, appellate counsel's failure to raise this argument on direct appeal was not ineffective.

---

[9] *Lloyd v. State*, 152, A.3d 1266, 1271 (Del. 2016).
[10] *Id.*
[11] *Phillips v. State*, 154 A.3d 1146, 1160 (Del. 2017) (omitting citations).
[12] *See Garden v. State*, 815 A.2d 327, 339 (Del. 2003) (upholding the Superior Court's use of the pattern jury instruction on eyewitness identification, which was substantially the same as the one used in Goode's case, as a correct statement of the law).

(11)   Goode next contends that his trial counsel was ineffective in cross-examining Jason Terry on the circumstances of his out-of-court identification of Goode as the person who shot him.  While in the hospital, Terry told police he did not know the name of the man who shot him but that he would recognize the shooter if he saw him again.  Later, Terry's cousin, Raye Boone, showed Terry a Facebook photo of Goode and told him that Goode had been overheard bragging about shooting someone.  After seeing the photo, Terry was sure Goode was the shooter. At trial, the following exchange occurred during the prosecutor's direct examination of Terry:

> Q: How did [Boone] go about showing you this photo, what did
>    she say?
> A: Well, these two individuals, after they shot me they had to go
>    around town and brag and tell everybody.

The Superior Court immediately admonished Terry not to testify about things that other people said and instructed the jury to disregard the comments.

(12)   Later, during defense counsel's cross-examination of Terry, the following exchange occurred:

> Q:  Let me go back.  At Milford [hospital], you could not identify
>     who shot you?
> A:  I didn't know, no.  I never seen him before.
> Q:  You went to Christiana [hospital]?
> A.  Right
> Q:  Okay?
> A:  Right.
> Q:  You spoke with Detective Horsman.
> A:  Yes, sir.  Right.

Q: And you still couldn't identify him?

A: No, I could once I seen the picture on my cousin's phone.

Q: Precisely. And the following day you see the picture on your cousin's phone?

A: No, the first day I saw the picture on my cousin's phone at Christiana. And that's when I recognized him.

Q: Before or after you talked to Detective Horsman?

A: That was before I talked to Detective Horsman. She came there and showed me the picture first. Then Detective Horsman came and showed me the picture and was like, do you know this person, because I had a picture on my phone, as well.

Q: Regardless, she shows you the picture and implies that this is the person that shot you, correct?

A: No, she replies and she says we have an idea because they was going around town, somebody was going around town bragging about they shot somebody today. And they was in the area…

Q: Let me stop you.

(13) Goode contends that defense counsel's cross-examination of Terry was constitutionally ineffective because counsel should have anticipated the risk of eliciting Terry's inadmissible and prejudicial hearsay comment that "somebody was going around town bragging about they shot somebody today." Goode contends that defense counsel's error incriminated him and that defense counsel compounded his mistake by failing to request a curative instruction.[13]

---

[13] In rejecting this claim below, the Superior Court stated, "Defendant fails to mention that the Court gave a *sua sponte* curative instruction immediately after the hearsay statements were introduced." *State v. Goode*, 2017 WL 4164421, at 2. While it is correct that the Superior Court gave a curative instruction *sua sponte* after the hearsay statement was elicited during the State's direct examination of the witness, no curative instruction was given after the same hearsay statement was elicited by defense counsel on cross-examination. This statement is the subject of Goode's present argument. The Superior

(14) In assessing the reasonableness of a defense attorney's challenged conduct, the United States Supreme Court held in *Strickland* that judicial scrutiny of counsel's performance "must be highly deferential" and that every effort should be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[14] Goode acknowledges that defense counsel's goal in cross-examining Terry was to undermine the reliability of Terry's identification of Goode as the shooter by suggesting that Terry could not name the shooter until his cousin showed him Goode's picture and suggested that Goode had done it.

(15) In reviewing defense counsel's cross-examination of Terry as a whole, we find trial counsel's questioning to fall within "the wide range of professionally competent assistance."[15] Defense counsel asked Terry, "Regardless, she shows you the picture and implies that this is the person that shot you, correct?" The question was narrowly focused and required a yes or no response. We reject Goode's contention that defense counsel erred by failing to anticipate that Terry's response to the question would include his

---

Court's conclusion that Goode's argument was procedurally barred under Rule 61(i)(4) as previously adjudicated is incorrect because the statement at issue in Goode's direct appeal was the hearsay statement made during direct examination and was subject to the Superior Court's curative instruction.

[14] *Strickland v. Washington*, 466 U.S. at 689.
[15] *Id.*

cousin's hearsay statement that "somebody was going around town bragging [that] they shot somebody today."

(16) Moreover, we reject Goode's contention that defense counsel erred by failing to request a curative instruction. Defense counsel responded to Terry's hearsay statement by interrupting Terry's answer and rephrasing the question, which prompted Terry's affirmative response.[16] We find counsel's choice to proceed in this manner, rather than interrupting his own cross-examination by asking the trial judge to give a curative instruction, to be entirely reasonable. Requesting a curative instruction would have drawn the jury's unwarranted attention to the hearsay testimony. Under the circumstances, we conclude that counsel's performance was well within the bounds of reasonable professional conduct.

(17) Goode's final argument on appeal is that his trial counsel was ineffective for failing to file a motion for a new trial based upon the post-trial test results of the gun, which yielded no DNA evidence.[17] Goode argues that

---

[16] Defense counsel's next question after interrupting Terry's response was, "She didn't say that, she shows you the picture and says, this is who we think shot you?" Terry replied, "[y]es, and I identified the person because I know."

[17] On direct appeal, Goode argued that the Superior Court abused its discretion in denying his request for a continuance to allow additional time to test the gun. We rejected that claim. In his postconviction motion, Goode argued below and argues on appeal that his trial counsel was ineffective for failing to file a motion for new trial based on the results of the gun testing. Goode's claim of ineffective assistance of counsel was not, and could not be, raised in his direct appeal. *Leacock v. State*, 690 A.2d 926, 928 (Del. 1996). Thus, we reject the Superior Court's rationale that Goode's ineffective assistance of counsel claim

the lack of DNA evidence connecting him to the gun supported a motion for a new trial based on the insufficiency of the State's evidence to prove him guilty beyond a reasonable doubt.

(18) We disagree. First, as a factual matter, the laboratory report with the test results was not completed until October 13, 2015. Goode's trial counsel had ceased representing Goode sometime in June 2015 after filing a notice of appeal on Goode's behalf. Goode pursued his appeal with the assistance of privately-retained counsel. Thus, Goode's trial counsel had no continuing duty—indeed, had no right—to pursue any relief on Goode's behalf after his representation ended.

(19) More importantly, however, there simply was no reasonable grounds for any lawyer to a file a motion for a new trial under these circumstances. As we noted on Goode's direct appeal, Terry's testimony that he was "one-hundred percent … sure" that Goode was the shooter—along with a neighbor's corroborating testimony placing Goode at the scene just moments before the shooting—was more than sufficient to prove Goode's guilt beyond a reasonable doubt.[18] The inconclusive post-trial test results

---

was procedurally barred by both Rule 61(i)(3), for his failure to raise the claim in the proceedings leading to the judgment of conviction, and by Rule 61(i)(4), as previously adjudicated.

[18] *Goode v. State*, 136 A.2d at 314.

were not such evidence "as [would] probably change the result if a new trial [were] granted."[19]  Thus, even if a motion for a new trial had been filed, it would not have been granted.  Accordingly, Goode cannot establish cause or prejudice to substantiate this ineffective assistance of counsel claim.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

---

[19] *Downes v. State*, 771 A.2d 289, 292 (Del. 2001).